Law Offices of Ezra Spilke

1825 Foster Avenue, Suite 1K<br>
Brooklyn, New York 11230<br>
t: (718) 783-3682<br>
e: ezra@spilkelaw.com<br>
www.spilkelaw.com

April 12, 2021

**BY ECF**
The Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *United States v. Latique Johnson et al.*, No. 16 Crim. 281

Dear Judge Gardephe:

We respectfully write on behalf of Latique Johnson to request (1) the appointment of counsel to submit a motion for a new trial based on newly discovered evidence pursuant to Rule 33 of the Federal Rules of Criminal Procedure; (2) a briefing schedule for the filing of the motion and (3) an indicative ruling pursuant to Rule 37 that the proposed motion raises a substantial issue. Enclosed please find a declaration by Stephen Adams that provides the newly discovered evidence. The undersigned represented Mr. Johnson through trial and sentencing and stand ready to resume our representation of Mr. Johnson for the purpose of making the motion.

On March 27, 2019, a jury convicted Mr. Johnson of five counts stemming from his involvement with and leadership of the Blood Hound Brims. Count Three, which is relevant here, charged Mr. Johnson with assault and attempted murder in aid of racketeering. By a special finding, the jury found that Mr. Johnson had committed or aided and abetted attempted murder but not assault. ECF No. 570.

The facts at trial were as follows. Two of the government's witnesses – Michael Adams and Manuel Rosario – testified that in Fall 2012, BHB members did a drive-by shooting of two members of the MacBallas. *United States v. Johnson*, 452 F. Supp. 3d 36, 64 (S.D.N.Y. 2019). According to Adams and Rosario, the shooting was part of the war between the BHB and the MacBallas. *Id.* at 53. According to Adams, Mr. Johnson gave the order to Saeed Kaid to do the shooting. *Id.* at 54. Rosario recalled Mr. Johnson speaking to Kaid before the shooting but not that an order was given. *Id.* Adams drove the car carrying the shooter and, Adams claimed, Kaid shot at the MacBallas "like two times." *Id.*

The defense advanced the theory, through the cross-examination of Michael Adams and in summation, that the shooting was really a personal matter between the Adams family and one of the targets of the shooting, known as Biggs. At trial, witness Michael Adams admitted that he knew Biggs from his "chilling with" Adams' cousin Cassiah Ingram, with whom Adams lived. Trial Tr. 591-92. At some point before the shooting, Biggs physically attacked Ingram and shot in her direction. Adams and Ingram were obviously close. In the fevered moments while Biggs was shooting in Ingram's direction and otherwise menacing her, Ingram phoned Michael Adams in a panic. *Id.* at 593-94. Adams testified that he heard gunshots over the phone. *Id.* at 594-95. To

escape Biggs, Ingram ran to Adams's apartment. *Id.* at 596-97. Two weeks later, Adams moved to Elmira. *Id.* at 597-98. The impetus for the move was Biggs's attack on Ingram. *Id.* at 598. Johnson argued that this series of events underscored the likely motive for the shooting of Biggs – a personal conflict between a close member of Adams's family and Biggs.

The defense was prompted to pursue this theory by a statement that Biggs proffered to the government and that was supplied to the defense before trial. Biggs suggested to the government that the shooting had to do with his conflict with Ingram. Biggs told the government that, shortly before he was shot at, he received a text message from Ingram saying, "I'm sorry it had to be you." ECF No. 646. As Michael Adams drove up to Biggs, Biggs caught a glimpse of the person sitting in the front passenger seat and believed it to be Ingram. *Id.* That the shooting was the result of a personal conflict was further supported by the hearsay statement of Stephen Adams to Rosario that he also shot at Biggs and Dummy. *Id.*

The defense asserted that Kaid did not do the shooting. Rather, it was witness Michael Adams or his brother Stephen Adams who shot at Biggs. Trial Tr. at 619; *see* ECF No. 644 at 14. In proffer after proffer with the government, witness Michael Adams omitted the fact that his brother Stephen was present for the shooting. Trial Tr. at 613. Michael Adams admitted on the stand that he did not want Stephen Adams to "get [into] more trouble." Trial Tr. at 614.

When Michael Adams finally placed Stephen at the scene, Stephen had no active role in the shooting. This was the version that witness Michael Adams settled on at trial. But the defense suggested that this was not the true extent of Stephen's involvement. During summation, the defense suggested that Michael Adams' omission was an indication that Stephen was far more involved in the shooting, and possibly the perpetrator, than Michael Adams finally admitted he was.

By declaration dated March 7, 2021, Stephen Adams vindicates the defense's theory. He *admits that he was the shooter* and that the motive for the shooting was Biggs' physical assault of Cassiah Ingram. Specifically, Stephen Adams writes:

> [O]n the night of the "MacBalla shooting," no such order to shoot at "Dummy & Biggz" was given by Latique Johnson. I was in the car and I, Stephen Adams[,] pulled the trigger shooting at Dummy & Biggz, dude to the fact (victim-1) bashed my cousin wife (Cassiah) head against an ice machine in the corner store of 213th and Barnes Ave.[] a few nights prior.

In addition to the appointment of counsel, Mr. Johnson seeks an indicative ruling that the proposed motion raises a substantial issue. By the filing of a notice of appeal, the court of appeals now has jurisdiction over the case.[1] The court of appeals, however, may remand to this Court for further proceedings, "[i]f the district court states that it would grant the motion or that the motion raises a substantial issue . . . ." Fed. R. App. P. 12.1(b). Under Rule 37, this Court may "state either that it would grant the motion if the court of appeals remands for that purpose

---

[1] Oral argument is tentatively scheduled for the week of June 1. Case Calendaring Statement, *United States v. Johnson*, No. 19-4357, (2d Cir. Mar. 17, 2021), ECF No. 154.

Hon. Paul G. Gardephe
April 12, 2021
Page 3 of 3

or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a)(3). The government opposes an indicative ruling that the motion raises a substantial issue and a motion for a stay in the Second Circuit.

The proposed motion for a new trial would track the argument outlined above. "Relief under Rule 33 based on newly discovered evidence may be granted only upon a showing that (1) the evidence was newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal." *United States v. Forbes*, 790 F.3d 403, 406–07 (2d Cir. 2015) (internal quotation and alteration marks omitted) (quoting *United States v. Owen*, 500 F.3d 83, 88 (2d Cir. 2007)).

Stephen Adams' declaration is obviously material and not cumulative. He plainly states what the defense could merely grasp at: that the motive for the shooting was personal and that someone connected to the Adams family, someone other than Kaid, did it. As the shooter, Stephen Adams' statement that Johnson never gave an order to shoot at Biggs and Dummy is exculpatory as to the government's theory that Johnson *did* give the order. The declaration is also exculpatory in that it vindicates the defense's position that the proffered motive for Kaid to do the shooting was nonsense. The information provided by Stephen Adams would have also undercut his brother's testimony, thus increasing the likelihood of an acquittal as to Count Three. The defense emphasized to the jury Adams' multitude of inconsistent statements, evasiveness and selective and feigned loss of memory and, although the new evidence may not be *merely* impeaching, it further weakens the government's case and strengthens the defense's.

For these reasons, the motion for a new trial will raise a substantial issue and the case should be remanded to this Court for further proceedings.

Respectfully submitted,

MEMO ENDORSED

 /s/ Ezra Spilke
Ezra Spilke
Paula J. Notari
*Counsel for Latique Johnson*

The application to appoint counsel for purposes of filing a motion for a new trial is granted.

Defendant will file his motion for a new trial by August 3, 2021. The Government will file its response by August 24, 2021. Defendant will file his reply, if any, by August 31, 2021.

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

July 13, 2021